John J. Nelson (SBN: 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Tel: (858) 209-6941
jnelson@milberg.com

Brett R. Cohen (SBN 337543)
**LEEDS BROWN LAW, P.C.**
One Old Country Rd., Ste. 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiff & the Putative Class*
(Additional Counsel listed on signature block)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNETTE BUTLER, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>- against -<br><br>PROSPER FUNDING LLC and PROSPER MARKETPLACE, INC.<br>Defendants. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Annette Butler ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, files this class action complaint against Defendant Prosper Funding LLC and Prosper Marketplace, Inc. ("Defendants"), and in support thereof alleges the following:

## INTRODUCTION

1. This class action arises out of the recent data breach on Defendants' network that resulted in unauthorized access to, and disclosure of, the highly sensitive data of individuals (the "Data

Breach").[1] As a result of the Data Breach, putative Class Members like Plaintiff Butler suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses, fraudulent transactions, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the present risk of imminent harm caused by the compromise of their sensitive personal information.

2. Upon information and belief, the specific information compromised in the Data Breach includes, but is not limited to, personally identifiable information ("PII" or "Private Information") exchanged in the normal course of applying for and servicing loans, investments, and other personal financing, such as full names, phone numbers, email addresses, mailing addresses, Social Security numbers, state identification numbers, and tax identification numbers.

3. Upon information and belief, Defendants obtained the PII of Plaintiff and Class Members and stored that PII, unencrypted, in an Internet-accessible environment on Defendants' network, from which unauthorized actors used an extraction tool to retrieve sensitive PII belonging to Plaintiff and Class Members.

4. The PII of Plaintiff and Class Members was entrusted to Defendants, their officials, and agents, yet was compromised and unlawfully accessed due to the Data Breach.

5. Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendants' inadequate safeguarding of Plaintiff's and Class Members' PII that Defendants collected and maintained, and for Defendants' failure to provide timely and adequate notice to Plaintiff and other Class Members that their PII had been subject to the unauthorized access of an unknown, unauthorized party.

6. Defendants maintained the PII in a negligent and/or reckless manner. In particular, the PII was maintained on Defendants' computer systems and networks in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendants, and thus Defendants were on notice

[1] Cybersecurity Incident, Prosper Funding, LLC: https://www.prosper.com/legal/incident-response (last visited Sept. 18, 2025).

that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

7. In addition, upon information and belief, Defendants and their employees failed to properly monitor the computer network, IT systems, and integrated service that stored Plaintiff's and Class Members' PII.

8. Plaintiff's and Class Members' identities are now at risk because of Defendants' negligent conduct because the PII that Defendants collected and maintained is now in the hands of malicious cybercriminals. The risks associated with the unauthorized disclosure of the PII as to Plaintiff and Class Members will exist for the duration of their respective lifetimes.

9. Defendants failed to provide timely, accurate and adequate notice to Plaintiff and Class Members. Plaintiff's and Class Members' knowledge about the PII Defendants allowed to be accessed, as well as precisely what type of information was unencrypted and in the possession of unknown third parties, was unreasonably delayed by Defendants' failure to warn impacted persons immediately upon learning of the Data Breach.

10. As remediation for allowing Plaintiff's and Class Members' PII to be acquired by an unauthorized third-party, Defendants have stated that they will notify the affected individuals and offer credit monitoring and identity protection services and no cost to them.[2] To date, Defendants have not offered any remediation, correction, or resolution to the victims of this Data Breach, but this assurance serves as an acknowledgement of the harm and elevated risk that affected individuals now face as a result of Defendants' conduct.

11. Indeed, armed with the PII accessed in the Data Breach, data thieves can commit a variety of crimes including opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain services, using Class Members' information to target other phishing and hacking intrusions using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in

[2] *Id.*

Class Members' names but with another person's photograph, and giving false information to police during an arrest.

12. As a result of the Data Breach, Plaintiff and Class Members have been exposed to a present, heightened, and imminent risk of fraud, identity theft, and other potentially dangerous and damaging acts. Plaintiff and Class Members must now closely monitor their financial accounts to guard against identity theft or these risks for the immediate future and beyond – including potentially for the rest of their lives.

13. Plaintiff and Class Members may also incur out-of-pocket costs for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

14. By her Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose PII was accessed during the Data Breach.

15. Accordingly, Plaintiff brings claims on behalf of herself and the Class for: (i) negligence, (ii) breach of implied contract (iii) invasion of privacy; (iv) unjust enrichment, (v) violations of the California Unfair Competition Law, and (v) declaratory judgment and injunctive relief. Through these claims, Plaintiff seeks, *inter alia*, damages and injunctive relief, including improvements to Defendants' data security systems and integrated services, future annual audits, and adequate credit monitoring services.

## PARTIES

16. Plaintiff Butler is a citizen of the State of Maryland, and at all times relevant to this action, resided and was domiciled in Aberdeen, Maryland.

17. Defendant Prosper Funding, LLC is a limited liability company, maintaining its principal place of business at 221 Main Street, 3rd Floor, San Francisco, California, 94105.

18. Defendant Prosper Marketplace, Inc. is a Delaware corporation maintaining its principal place of business at 221 Main Street, 3rd Floor, San Francisco, California, 94105.

## JURISDICTION & VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class, including Plaintiff, is a citizen of a state different than the named Defendants.

20. This Court has personal jurisdiction over Defendants because Defendants are headquartered in this District and conduct business in California and this District through their headquarters, offices, parents, and affiliates.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants' principal places of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *A. Background on Defendants*

22. Defendant Prosper Funding is a corporation that services loans, manages borrower and investor relationships, and offers tools for financial planning and credit monitoring.

23. Defendant Prosper Funding is a subsidiary of Defendant Prosper Marketplace, a financial services company that operates Prosper.com.

24. In the ordinary course of business, Defendants obtain, store, and maintain employees and clients Private Information, including names, dates of birth, Social Security numbers, addresses, phone numbers, financial account information, and medical information.

25. In exchange for receiving Plaintiff and Class Members' Private Information, Defendants promised to safeguard the sensitive, confidential data and use it only for authorized and legitimate purposes, and to delete such information from their systems once there was no longer a need to maintain it.

26. The information Defendants held in their computer networks at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

27. At all relevant times, Defendants knew they were storing and using their networks to store and transmit valuable, sensitive Private Information belonging to Plaintiff and Class Members, and that as a result, their systems would be attractive targets for cybercriminals.

28. Defendants also knew that any breach of their information technology network and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the individuals whose Private Information was compromised, as well as intrusion into those individuals' highly private financial information.

29. Plaintiff and Class Members relied on Defendants promises, expressly worded and implied through their conduct in requiring Plaintiffs and Class Members to provide their Private Information, to implement reasonable practices to keep their sensitive Private Information confidential and securely maintained, to use this information for necessary purposes only and make only authorized disclosures of this information, and to delete Private Information from Defendants systems when no longer necessary for their legitimate business purposes.

30. Based on the foregoing representations and warranties and to obtain services from Defendants, Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their promises and obligations to keep such information confidential and protected against unauthorized access.

31. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information. To that end, Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

32. Defendants derived economic benefits from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendants could not perform their operations or provide their revenue-generating services. Additionally, upon information and belief Defendants use the Private Information collected from Plaintiffs and Class Members for marketing and fundraising purposes.

33. By obtaining, using, and benefiting from Plaintiff's and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting that Private Information from unauthorized access and disclosure.

34. Defendants had and continues to have a duty to adopt reasonable measures to keep Plaintiff's and Class Members' Private Information confidential and protected from involuntary disclosure to third parties, and to audit, monitor, and verify the integrity of their IT networks, and train employees with access to use adequate cybersecurity measures.

35. Defendants had and continue to have obligations created by the FTC Act, 15 U.S.C. § 45, common law, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and protected from unauthorized disclosure. Defendants failed to do so.

***B. The Data Breach***

36. Recently, Defendants discovered unauthorized activity on their systems.[3] In response, Defendants launched an investigation to determine the nature and scope of the Data Breach.[4]

---

[3] Cybersecurity Incident, Prosper Funding, LLC: https://www.prosper.com/legal/incident-response (last visited Sept. 18, 2025).

[4] *Id.*

37. Defendants' investigation determined that confidential, proprietary, and personal information, was exposed as a result of the Data Breach.[5] Upon information and belief, the types of Private Information compromised included names and Social Security Numbers.

38. On September 17, 2025, Defendants began emailing impacting individuals to notify them of the Data Breach. A copy of the email Plaintiff received is attached as Exhibit A.

39. Defendants had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

40. Plaintiff and Class Members provided their Private Information to Defendants, with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

41. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

42. Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

***C. The Data Breach was a Foreseeable Risk and Defendants were on Notice***

43. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the financial services industry and other industries holding significant amounts of PII preceding the date of the breach.

[5] *Id.*

44. Considering some recent high profile data breaches at other financial services companies, Defendants knew or should have known that their electronic records and PII they maintained would be targeted by cybercriminals and ransomware attack groups.

45. Defendants knew or should have known that these attacks were common and foreseeable.

46. These types of attacks are sharply on the rise. To wit, in 2023, there were a record 3,205 total compromises, which represents a 72% increase from the previous all-time high figure that was recorded in 2021.[6]

47. Therefore, the increase in such attacks, and the likely risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

***D. Defendants Fail to Comply with FTC Guidelines***

48. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

49. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct any security problems.[7] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all

[6] Identity Theft Resource Center's Annual Data Breach, available at https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last accessed February 8, 2024).

[7] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed February 8, 2024).

incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[8]

50. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third- party service providers have implemented reasonable security measures.

51. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

52. The FTC enforcement actions include actions against financial providers and partners like Defendants.

53. Defendants failed to properly implement basic data security practices.

54. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers and other impacted individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

55. Defendants were at all times fully aware of their obligation to protect the PII. Defendants were also aware of the significant repercussions that would result from their failure to do so.

### *E. Defendants Fail to Comply with Industry Standards*

56. Experts studying cyber security routinely identify financial service providers and servicers as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

57. Several best practices have been identified that at a minimum should be implemented by financial service provider like Defendants, including but not limited to: educating all employees; strong

[8] *Id.*

passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

58. Other best cybersecurity practices that are standard in the financial industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

59. Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

60. These foregoing frameworks are existing and applicable industry standards in the financial industry, and Defendants failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

61. Defendants breached their obligations to Plaintiff and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and websites' application flow. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions: failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks; failing to adequately protect PII; failing to properly monitor their own data security systems for existing intrusions; failing to ensure that their vendors with access to their computer systems and data employed reasonable security procedures; failing to ensure the confidentiality and integrity of electronic PII it created, received, maintained, and/or transmitted; failing to implement technical policies and procedures for electronic information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights; failing to

implement policies and procedures to prevent, detect, contain, and correct security violations; failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports; failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PII; failing to train all members of their workforces effectively on the policies and procedures regarding PII; failing to render the electronic PII it maintained unusable, unreadable, or indecipherable to unauthorized individuals; failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; failing to adhere to industry standards for cybersecurity as discussed above; and, otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' PII.

62. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII by allowing cyberthieves to access Defendants' database, which provided unauthorized actors with unsecured and unencrypted PII.

63. Accordingly, as outlined below, Plaintiff and Class Members now face a present, increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendants.

***F. Data Breaches Cause Disruption and Increased Risk of Fraud and Identity Theft***

64. Cyberattacks and data breaches at financial services companies like Defendants are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

65. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[9]

[9] See U.S. GOV. ACCOUNTING OFFICE, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007) https://www.gao.gov/new.items/d07737.pdf (last accessed February 8, 2024).

66. That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

67. The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[10]

68. Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

69. Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent

---

[10] See IdentityTheft.gov, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps (last visited February 8, 2024).

a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

70. Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[11]

71. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

72. It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used.

73. PII is such a valuable commodity to identity-thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

74. There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

75. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

76. PII can sell for as much as $363 per record according to the Infosec Institute.[12] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for many years.

---

[11] See, e.g., John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[12] See Ashiq Ja, Hackers Selling Healthcare Data in the Black Market, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed February 8, 2024)

77. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[13] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits or apply for a job using a false identity.[14] Each of these fraudulent activities is difficult to detect. An individual may not know that their Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

78. Moreover, it is not a straightforward task to change or cancel a stolen Social Security number.

79. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[15]

80. This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[16]

81. Because of the value of its collected and stored data, the financial services industry has experienced disproportionally higher numbers of data theft events than other industries.

---

[13] Identity Theft and Your Social Security Number, SOCIAL SECURITY ADMINISTRATION (2018) at 1, https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed February 8, 2024).

[14] *Id.* at 4.

[15] Brian Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (February 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed February 8, 2024).

[16] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, COMPUTER WORLD (February 6, 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed February 8, 2024).

82. For this reason, Defendants knew or should have known about these dangers and strengthened their data and email handling systems accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach, yet Defendants failed to properly safeguard against such risk.

***G. Plaintiff's and Class Members' Damages***

83. To date, Defendants have done nothing to provide Plaintiff and the Class Members with relief for the damages they have suffered as a result of the Data Breach.

84. Plaintiff and Class Members have been damaged by the compromise of their PII in the Data Breach.

85. Plaintiff and Class Members' full names and Social Security numbers were compromised in the Data Breach and are now in the hands of the cybercriminals who accessed Defendants' software maintaining PII. This PII was acquired by some unauthorized, unidentified third- party threat actor.

86. Since being notified of the Data Breach, Plaintiff has spent time dealing with the impact of the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

87. Due to the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring her accounts for fraudulent activity.

88. Plaintiff's PII was compromised as a direct and proximate result of the Data Breach.

89. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

90. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

91. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

92. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

93. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

94. Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

95. Plaintiff and Class Members were also damaged via benefit-of-the- bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiff and Class Members paid to Defendants was intended to be used by Defendants to fund adequate security of Defendants' systems and Plaintiff's and Class Members' PII. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

96. Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and PII for misuse.

97. Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to: reviewing and monitoring sensitive accounts and finding fraudulent financial claims, loans, and/or government benefits claims; purchasing credit monitoring and identity theft prevention; placing "freezes" and "alerts" with reporting agencies; spending time on the phone with or at financial institutions,

healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name; contacting financial institutions and closing or modifying financial accounts; and closely reviewing and monitoring Social Security numbers, medical financial accounts, bank accounts, and credit reports for unauthorized activity for years to come.

98. Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of adequate security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing PII is not accessible online and that access to such data is password protected.

***H. Plaintiff Butler's Experience***

99. Plaintiff Butler provided her information to Defendants as a condition of applying for and/or receiving Defendants' lending services in 2025.

100. Plaintiff Butler is careful about sharing her sensitive Private Information. Plaintiff Butler has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

101. Based on the information she provided to Defendants, Plaintiff Butler reasonably believes that her PII including, but not limited to, her name, address, phone number, email address, Social Security number, and/or financial information were compromised in this Data Breach.

102. As a result of the Data Breach, Plaintiff Butler made reasonable efforts to mitigate the impact of the Data Breach after receiving notice of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud.

103. Plaintiff Butler has spent significant time and will continue to spend valuable hours for the remainder of her life, that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

104. Plaintiff Butler suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: damage to and diminution in the value of her PII, a form of

property that Defendants maintained belonging to Plaintiff Butler; violation of her privacy rights; the theft of her PII; present, imminent and impending injury arising from the increased risk of identity theft and fraud; and, fraudulent activity associated with her name and PII including fake bank accounts being opened using her PII and under her name.

105. As a result of the Data Breach, Plaintiff Butler anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of her life.

## CLASS ALLEGATIONS

106. Plaintiff brings this action individually and as a class action on behalf of a proposed Class pursuant to Federal Rule of Civil Procedure 23.

107. Plaintiff proposes the following Class: All persons residing in the United States whose Private Information was compromised in the Data Breach.

108. Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and Members of their staff.

109. Plaintiff reserves the right to amend or modify the Class definition as this case progresses.

110. Numerosity: The members of the Class are so numerous that individual joinder of all Class members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals whose sensitive data was compromised in the Data Breach.

111. Commonality: This action involves questions of law and fact that are common to the Class members. Such common questions include, but are not limited to: whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII; whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the

information compromised in the Data Breach; whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations; whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards; whether Defendants owed a duty to Class Members to safeguard their PII; whether Defendants breached their duty to Class Members to safeguard their PII; whether Defendants knew or should have known that their data security systems and monitoring processes were deficient; whether Defendants should have discovered the Data Breach sooner; whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendants' misconduct; whether Defendants' conduct was negligent; whether Defendants breach implied contracts with Plaintiff and Class Members; whether Defendants were unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members; whether Defendants failed to provide notice of the Data Breach in a timely manner, and whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

112. Typicality: Plaintiff's claims are typical of the other Class members' claims because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

113. Adequacy of Representation: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including consumer protection litigation. Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the interests of the other members of the Class.

114. Superiority: This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale,

and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision making.

115. Predominance: Common questions of law and fact predominate over any questions affecting only individual Class members. A common pattern and practice of privacy violations are the predominant question to be tried. Individual questions, if any, are relatively minor in relation to the common questions listed above.

116. Ascertainability: Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Defendants' records. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendants.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

### (On Behalf of Plaintiff and the Class)

117. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

118. Plaintiff and the Class entrusted Defendants with their PII on the premise and with the understanding that Defendants would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

119. Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

120. By collecting and storing this data in their computer system and network, and sharing it and using it for commercial gain, Defendants owed a duty of care to use reasonable means to secure and safeguard their computer system – and Class Members' PII held within it – to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which they could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

121. Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

122. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and individuals who entrusted them with PII, which is recognized by laws and regulations, as well as common law. Defendants were in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

123. Defendants' duty to use reasonable security measures required Defendants to reasonably protect confidential data from any intentional or unintentional use or disclosure.

124. In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

125. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential PII.

126. Defendants breached their duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following: failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII; failing to adequately monitor the security of their networks and systems; failing to have in place mitigation policies and procedures; allowing unauthorized access to Class Members' PII; failing to detect in a timely manner that Class Members' PII had been compromised; and failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

127. Defendants owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to timely and accurately

disclose to Plaintiff and Class Members the scope, nature, and occurrence of the data breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the data breach.

128. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

129. Defendants breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

130. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security protocols. Defendants actively sought and obtained Plaintiff's and Class Members' PII.

131. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII – whether by malware or otherwise.

132. PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members and the importance of exercising reasonable care in handling it.

133. Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class Members – which actually and proximately caused the Data Breach and injured Plaintiff and Class Members.

134. Defendants further breached their duties by failing to provide reasonably timely notice of the data breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the data breach and Plaintiff and Class Members' injuries-in-fact. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

135. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the data breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT

### (ON BEHALF OF PLAINTIFF AND THE CLASS)

136. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

137. Plaintiff and Class Members were required to deliver their Private Information to Defendants as part of the process of obtaining services from Defendants. In order to obtain services from Defendants, Plaintiff had to provide Defendants with his Private Information.

138. Defendants solicited, offered, and invited Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

139. Defendants accepted possession of Plaintiff's and Class Members' Private Information for the purpose of offering and providing services to Plaintiff and Class Members.

140. Plaintiff and Class Members entrusted their Private Information to Defendants. In so doing, Plaintiff and Class Members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

141. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations and were consistent with industry standards.

142. Implicit in the agreement between Plaintiff and Class Members and Defendants to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

143. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendants, on the other, is demonstrated by their conduct and course of dealing.

144. On information and belief, at all relevant times, Defendants promulgated, adopted, and implemented written privacy policies whereby they expressly promised Plaintiff and Class Members that they would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

145. On information and belief, Defendants further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

146. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure.

147. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

148. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

149. Defendants breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach.

150. As a direct and proximate result of Defendants breach of the implied contracts, Plaintiff and Class Members sustained damages including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants possession and

is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

151. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

152. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**THIRD CAUSE OF ACTION**

**INVASION OF PRIVACY**

**(On Behalf of Plaintiff and the Class)**

153. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

154. Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

155. Defendants owed a duty to Plaintiff and Class Member to keep their PII confidential.

156. The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

157. Defendants' reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

158. Defendants failed to protect Plaintiff's and Class Members' PII with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

159. Defendants knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

160. As a proximate result of Defendants' acts and omissions, the private and sensitive PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

161. Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendants with their inadequate cybersecurity system and policies.

162. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII of Plaintiff and the Class.

163. Plaintiff, on behalf of herself and Class Members, seeks injunctive relief to enjoin Defendants from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

164. Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(On Behalf of Plaintiff and the Class)**

165. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

166. Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

167. As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

168. Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they purchased services from Defendants and/or their agents and in so doing provided Defendants with their PII. In exchange, Plaintiff and Class Members should have received from Defendants the services that were the subject of the transaction and have their PII protected with adequate data security.

169. Defendants knew that Plaintiff and Class Members conferred a benefit which Defendants accepted. Defendants profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

170. Plaintiff and Class Members conferred a monetary benefit on Defendants, by paying Defendants as part of Defendants rendering lending services, a portion of which was to have been used for data security measures to secure Plaintiff's and Class Members' PII, and by providing Defendants with their valuable PII.

171. Defendants were enriched by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid the data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

172. Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

173. Defendants acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

174. If Plaintiff and Class Members knew that Defendants had not secured their PII, they would not have agreed to provide their PII to Defendants.

175. Plaintiff and Class Members have no adequate remedy at law.

176. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

177. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

178. Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendants' services.

## FOURTH CAUSE OF ACTION

### UNFAIR OR UNLAWFUL ACTS OR PRACTICES

### CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200

### (On Behalf of Plaintiff and the Class)

179. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

180. Plaintiff and Class Members qualify as a "person[s]" as defined by California Business & Professions Code section 17201. California Bus. & Prof. Code section 17204 authorizes a private right of action on both an individual and representative basis.

181. California Business and Professions Code Section 17200 declares to be "unfair competition" four types of acts or practices: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." Unfair competition need not qualify as all four of these types of wrong to be actionable.

182. Defendants engaged in unlawful conduct under section 17200 et seq. with respect to the services provided to the Class.

183. Defendants engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members' PII with knowledge that the information would not be adequately protected; and by storing Plaintiff's and Class Members' PII in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendants to take reasonable methods for safeguarding the PII of Plaintiff and the Class Members.

184. In addition, Defendants engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

185. As a direct and proximate result of Defendants' unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received

by Defendants for the products and services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described herein.

186. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' PII and that the risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

187. Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendants may have acquired by means of their unlawful, and unfair business practices, disgorgement of all profits accruing to Defendants because of their unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## FIFTH CAUSE OF ACTION

### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

**(On Behalf of Plaintiff and the Class)**

188. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this complaint.

189. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state statutes described above.

190. An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendants' common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendants' actions in this respect were inadequate and unreasonable and, upon

information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

191. Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following: Defendants owed, and continue to owe, a legal duty to employ reasonable data security to secure the PII they possess, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act; Defendants breached, and continue to breach, their duty by failing to employ reasonable measures to secure their customers' personal and financial information; and Defendants' breach of their legal duty continues to cause harm to Plaintiff and the Class.

192. The Court should also issue corresponding injunctive relief requiring Defendants to employ adequate security protocols consistent with industry standards to protect Plaintiff's and the Class Members' data.

193. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendants' data systems. If another breach of Defendants' data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

194. The hardship to Plaintiff and the Class if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued.

195. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members, prays that judgment be entered against Defendants, and that Plaintiff and the Class Members be awarded monetary and other relief from Defendants, as follows:

- Certify the Class as requested herein.
- Appoint Plaintiff to serve as the Class Representative for the Class.
- Appoint Plaintiff's Counsel as Class Counsel in this matter.
- Award monetary relief to Plaintiff and the Class.
- Enter injunctive and declaratory relief as appropriate.
- Award Plaintiff and the Class pre-judgment and/or post-judgment interest as prescribed by law.
- Reasonable attorneys' fees and other litigation costs reasonably incurred on behalf of the Class Members.
- An award of costs to Plaintiff; and
- Any other relief the Court may deem just and proper including interest.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

Dated: October 31, 2025

/s/: John J. Nelson

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel.: (858) 209-6941
jnelson@milberg.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel.: (513) 345-8291
jgoldenberg@gs-legal.com

Charles E. Schaffer *
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut St., Ste 500
Philadelphia, PA 19106
Tel: (215) 592-1500
cschaffer@lfsblaw.com

Brett R. Cohen (SBN 337543)
**LEEDS BROWN LAW P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514-1851
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiff & the Putative Class*

* *Pro hac vice forthcoming*